### STRIBLING et al. v. STRIBLING.

No. 8130.

Court of Civil Appeals of Texas. Austin.

June 19, 1935.

Rehearing Denied July 10, 1935.

W. H. Nunn, of Georgetown, C. C. Ashley, of Llano, and James Cornell and D. B. Hardeman, both of San Angelo, for appellants.

V. B. Goar and N. T. Stubbs, both of Johnson City, for appellee.

BAUGH, Justice.

This was a suit brought by appellee, a widow, in trespass to try title to, and to recover title and possession of, some 15,000 acres of land in Blanco county, and of certain personal property; and to cancel and set aside articles of incorporation of L. F. Stribling, Incorporated, and conveyances and assignments to said corporation which Mrs. L. F. Stribling had executed. The parties will be designated as in the trial court. The record is voluminous, the proceedings in the trial court numerous and complicated, and appellants' brief contains 197 assignments of error upon which 18 propositions are predicated. We shall confine ourselves, however, to what we deem the controlling issues presented and pretermit, in the interest of brevity, a discussion of matters which we deem nonessential.

The suit was by the mother, 92 years of age, whose hearing and eyesight were greatly impaired, against her seven children, and against L. F. Stribling, Inc., predicated upon an alleged conspiracy to deprive her of all of her property without compensation to her. Her husband, J. C. Stribling, Sr., died intestate in 1900.

Thereafter, and prior to the time of the conspiracy alleged, she had purchased and received conveyances from four of said children of their interest in their father's estate. These children filed disclaimers in this suit, and the controversy in the trial court, and that presented here, is between the mother, as plaintiff. below, and her three sons, J. C., D. H., and W. F. Stribling, and L. F. Stribling, Inc. In April, 1932, Mrs. Stribling was induced to join with D. H. and W. F. Stribling in forming a corporation with $10,000 capital stock, consisting of 100 shares of the par value of $100 each, the charter of which recited all stock to have been fully paid, 52 shares to be held by Mrs. L. F. Stribling, 32 shares by D. H. Stribling, and 16 shares by W. F. Stribling; and that D. H., W. F., and Mrs. L. F. Stribling were directors for the first year. On April 23, 1932, Mrs. Stribling, then 91 years of age, conveyed to the corporation all of her property, both real and personal.

This suit was originally filed on July 5, 1933, and went to trial before a jury on October 2, 1933, upon plaintiff's third amended petition, after pleas of privilege theretofore filed by said three named sons had been waived by them, under circumstances not necessary to here enumerate. At the risk of unduly prolonging this opinion, we quote the following pertinent allegations of plaintiff's petition:

"That, as herein alleged, plaintiff's second husband was J. C. Stribling, Sr., and the defendants, J. C. Stribling and D. H. Stribling, were the eldest sons of said second marriage, and the said defendants, J. C. Stribling and D. H. Stribling and W. F. Stribling, had been successful ranchmen, and, before said April 23, 1932, they had extensive business experience, and plaintiff had unlimited confidence in their business judgment as to how her property should be managed for her best interest; that each of said three defendants had often advised her about her business affairs since the death of J. C. Stribling, Sr., and she had implicit confidence in the honesty and integrity of each and all of them, especially the said J. C. Stribling, and she had no suspicion whatever of any fraud being perpetrated upon her by any of them; that, notwithstanding her unlimited confidence in them, plaintiff now has reason to believe and does believe, and she therefore alleges, that on or about April 21, 1932, the said three defendants, J. C. Stribling, D. H. Stribling and W. F. Stribling, formed a fraudulent conspiracy to acquire practically all of plaintiff's property without paying her anything of value for the same; that upon said belief plaintiff alleges that said three defendants, without any previous agreement or understanding with plaintiff, procured the advice and help of a lawyer who was unknown to plaintiff, and, at their own expense, caused said attorney to meet them at Llano, Texas, for the purpose of drafting such papers as they and their said attorney deemed necessary for said fraudulent purpose; that after said three defendants and their said attorney had agreed among themselves as to the kind, character and tender of papers they wished plaintiff to execute they agreed among themselves that the said defendant, J. C. Stribling, was the proper person to prevail on plaintiff to execute the same; that, thereupon, on or about April 23, 1932, the said defendant, J. C. Stribling, did come to the home of plaintiff at Round Mountain, Blanco County, Texas, and approached plaintiff about her property, and he suggested to her that she go to Llano, Texas, with him, the said J. C. Stribling, for the purpose of signing some papers necessary for the protection of her property; that plaintiff did not wish to go to Llano on that occasion and so expressed herself to said defendant; that, thereupon, said defendant, J. C. Stribling, assured plaintiff that at her death practically all of her property would go to the Government or the State of Texas for inheritance tax and that her children would receive very little, if anything, of her said estate unless some papers were fixed up or signed by her; that said defendant, J. C. Stribling, did not explain nor attempt to explain what papers he wanted or expected plaintiff to sign but he, while at her home assured plaintiff and made her believe it was to her best interest and also for the protection of plaintiff's children after her death; that said defendant, J. C. Stribling, nor any one else suggested to plaintiff at that or any other time that she was expected to convey all of her property or any part of same to any one else; that plaintiff then and there had implicit confidence in said J. C. Stribling and had full faith in his honesty of purpose, and she then and there verily believed that said defendant, J. C. Stribling, D. H. Stribling and W. F. Stribling were attempting to protect her and her property and the interest of all of her children after her death;

that, acting under such confidence and the direction of said J. C. Stribling, plaintiff did go with him to Llano, Texas, a distance of about 35 miles from her home, and on or about said April 23, 1932, said defendant, J. C. Stribling, took plaintiff to the office of him, the said J. C. Stribling, in Llano, Texas; that at said office plaintiff met defendants, D. H. Stribling and W. F. Stribling, and M. M. Moss and others whom she did not know; that in the presence of defendants, D. H. Stribling and W. F. Stribling, the defendant, J. C. Stribling, presented a paper which was signed by W. F. Stribling and D. H. Stribling, and told plaintiff it was one of the papers he had told her about, and he told plaintiff to sign same; that believing it was to her best interest and that same was necessary to protect her property and estate after her death for the benefit of her children, plaintiff signed said paper without reading or having the same read to her; that on that occasion plaintiff signed other papers at the suggestion and direction of her said sons, J. C. Stribling, D. H. Stribling and W. F. Stribling, but she did not know what any of said papers or instruments contained or meant; that in truth and in fact it was not necessary for plaintiff to execute said instruments or any other instrument to protect her property or estate after her death from the supposed inheritance tax; that the statements and representations of said J. C. Stribling to the effect that it was necessary for plaintiff to execute said instruments for the protection of her said property or estate and the best interest of her children were false and made for the sole purpose on the part of said defendants, J. C. Stribling, D. H. Stribling and W. F. Stribling to acquire all of the property of plaintiff without paying anything of value for same; that at said time and for several months prior to said time plaintiff was almost deaf and could not read except with great difficulty; that no one read or explained any of said papers or instruments to plaintiff and she was not requested to read the same; that, as herein alleged, plaintiff had unlimited confidence in the ability of her sons and she verily believed they knew what was best and proper for her to do about her property and she had unbounded confidence in their honesty and integrity and she verily believed that whatever they told her to sign was for her own interest and to protect her children after her death; that plaintiff had no intention to convey the title of her property to any-

one and she did not know she was so conveying the same; that had it not been for the confidence she had in said sons, especially J. C. Stribling, and what they represented to her as to her best interest and that of her children she would not have signed said papers conveying her property."

To the merits of said allegations, and subject to other pleas on file, all of said defendants, appellants here, answered only by general demurrer, general denial, and pleas of not guilty. After the trial had proceeded some two or three days, and as a defense, the appellants offered in evidence a second deed from Mrs. Stribling to the corporation, specifically describing and conveying to it the lands here involved; a bill of sale from her to the corporation of all livestock owned by her; and an assignment by her to the corporation of all notes, accounts, and other evidences of indebtedness owned by her. All of these instruments were dated May 14, 1932. The bill of sale had been recorded in Blanco county, but the deed and the assignment had not been recorded. These unrecorded instruments had been in the possession of appellants, and their existence was not known to plaintiff's attorneys at the time the case went to trial. Plaintiff's counsel thereupon asked for, and were granted, leave to file a trial amendment, asking that these instruments withheld by defendants and dated May 14, 1932, be also canceled as a cloud upon her title and as being procured as a part of the same fraudulent conspiracy under which the instruments of April 23, 1932, attacked in plaintiff's pleadings, had been procured.

The case was tried to a jury upon special issues, in answer to which they found, under separate inquiries, that Mrs. Stribling did not understand the nature and effect of any of the several instruments she executed on April 23, 1932, and May 14, 1932; that the execution of said instruments was procured by the fraud of the defendants or of one of them; and that the execution of such instruments was procured by the undue influence of said defendants or of one of them. Based upon said findings, and the uncontroverted evidence on issues not submitted to the jury, the court rendered judgment for plaintiff as prayed for, establishing the undivided interests in said lands inherited by J. C., D. H., and W. F. Stribling, from their father, and ordered partition of same.

From such judgment the defendants have appealed. Further pertinent facts will be stated in the discussion of the issues presented.

The first contention of the defendants is that the trial court erred in permitting one of plaintiff's attorneys in his argument to the jury to read to them from the depositions of Mrs. Stribling, taken before the trial, because such deposition had not been introduced in evidence.

 The statement of facts, agreed to by counsel for all parties to the suit, and approved by the trial court, does not contain the depositions so read to the jury and objected to at the time. The statement of facts when so approved is conclusive on appeal as to the evidence admitted upon the trial. Hillebrant v. Brewer, 6 Tex. 45, 55 Am. Dec. 757; McBurnett v. Smith et al. (Tex. Civ. App.) 286 S. W. 599; Burton v. McGuire (Tex. Com. App.) 41 S.W.(2d) 238; 3 Tex. Jur. § 564, p. 794, and numerous cases there cited. We do not find any conflict between the statement of facts and the bill of exception prepared by the trial court after that prepared by defendants had been rejected. This bill recites that said depositions were offered in evidence by plaintiff's counsel upon the trial, whereupon defendants' counsel objected to their being read to the jury, "stating that same were already in evidence and that it would be unnecessary repetition; to which plaintiff's attorneys replied that if they were already in evidence for all purposes and could be argued to the jury, they would withdraw their offer to introduce and read said depositions, and they then and there withdrew same in the presence of and without objection from defendants' attorneys." This is not a recital that said depositions were in fact in evidence, but merely that failure to introduce them was due to statement of defendants' counsel that they were already in evidence, and an implied acquiescence of defendants' counsel to plaintiff's counsel's purpose to so consider them, and to argue them to the jury. There is no contention that the depositions were not admissible. While it was clearly the duty of counsel for plaintiff to see to it that his evidence was properly introduced, the record discloses that this was a highly contested suit, involving numerous controversies extending over several days, and a voluminous statement of facts, aggregating more than 600 pages, was compiled. The depositions in question had in fact been introduced before the trial court on defendants' motion for a continuance, but not before the jury upon the trial on the merits. It is clear, we think, that both the court and the plaintiff's counsel thought the depositions were in evidence. From the recital of the court's bill of exception it is obvious that defendants' counsel so considered them when they were offered upon the trial. Under such circumstances, and their admissibility as evidence not being attacked, we are inclined to the view that defendants estopped themselves, under the circumstances, to object to their being argued to the jury; and that the error of the trial court, if such it was, partakes of the nature of invited error on the part of the defendants. If it be so treated, it is clear that such error cannot be taken advantage of on appeal. Republic Ins. Co. v. O'Donnell Motor Co. (Tex. Civ. App.) 289 S. W. 1064, 1065; Texas Emp. Ins. Ass'n v. Newton (Tex. Com. App.) 25 S.W.(2d) 608, 609; 3 Tex. Jur. § 731, p. 1031, and numerous cases there cited.

██ Whether defendants be estopped to assert as error the action of the trial court or not, or if it be conceded that the trial court erred as charged, we have reached the conclusion that such error, if any, was harmless. The depositions of Mrs. Stribling were taken in August, 1932, and duly filed. Mrs. Stribling was present upon the trial of the case and testified at length on the same subject-matter inquired about in the interrogatories. We have read carefully her testimony given upon the trial, and that read to the jury from her depositions. We find no material variance between them. Under these circumstances, and in view of the fact that substantially the same testimony was given by her in person before the jury as was embraced in the depositions in question, we are clear in the view that no substantial prejudice could have resulted to the defendants in the premises, and that the error, if any, was harmless under rule 62a. D. & H. Truck Line v. Lavallee (Tex. Civ. App.) 7 S.W. (2d) 661; Driscoll v. Dennis (Tex. Civ. App.) 240 S. W. 1049; 3 Tex. Jur. § 873, p. 1246.

Defendants next contend that plaintiff's trial amendment set up a new cause of action, entitling them to file additional pleas of privilege thereto, to withdraw their announcement of ready, and to be granted a continuance of the cause. We do not sus-

tain this contention. Clearly, we think, no new cause of action was pleaded therein. It is true that the petition on which plaintiff went to trial sought cancellation only of the instruments executed by Mrs. Stribling on April 23, 1932; and that the trial amendment sought cancellation of the deed, the assignment, and the bill of sale, of date May 14, 1932. But the suit was one in trespass to try title, to recover the lands in question, and to set aside the instruments described in the petition, on the ground that the whole transaction or series of transactions were but the consummation of a conspiracy on the part of the three named sons to deprive their aged mother of her entire estate without compensation. The basis of the suit sounded in fraud, conspiracy, and imposition upon her in her enfeebled condition, and in taking advantage of the confidence she reposed in them. Recovery of her property was her purpose. The instruments involved were but steps or incidents in carrying out the conspiracy alleged. The fact that plaintiff's counsel did not know of the existence of the instruments of May 14th, until offered by defendants in evidence, was obviously the reason they were not attacked in the original pleadings. In the trial amendment plaintiff merely added these instruments, with the allegations that same were procured by defendants to the same property, and kept by defendants without being recorded in furtherance of, and pursuant to, the same scheme to defraud her of her property. Consequently, no new cause of action was set up, but the same general transaction between the same parties involving the same subject-matter was pleaded in the trial amendment as was attacked in the petition on which 'announcement of ready was made. The trial amendment did not in any manner abandon the original cause of action asserted, but merely extended same to include additional instruments produced on the trial by the defendants themselves. The trial amendment expressly alleged that these additional instruments were procured pursuant to and in furtherance of the same conspiracy of April 21st through which the instruments of April 23d were procured. Obviously there could have been no surprise to defendants in such an amendment for the patent reason that they were cognizant of the charges made against them by their mother in all her pleadings, and had these instruments in their possession at all times, knew the circumstances of their execution, and were holding them in reserve, without pleading them in their answers, as a defense in the premises.

While the cases are not harmonious, and some confusion exists as to what constitutes a new cause of action set up by amendment, generally the question is referable to the facts and circumstances of the particular case; and the ends of justice have had considerable bearing upon its determination, and upon the discretion exercised by the trial court in the premises. The general rules constituting the test of a new cause of action so pleaded are stated in Phœnix Lumber Co. v. Houston Water Co., 94 Tex. 456, 61 S. W. 707, 709; but the facts of this case do not contravene the rules there announced. The test stated by Judge Pleasants in Galveston, H. & S. A. R. Co. v. Brewer (Tex. Civ. App.) 4 S.W.(2d) 320, 324 (writ ref.), is that "an amended petition asserting a cause of action between the same parties and growing out of the same transaction or occurrence as that alleged in the original petition does not set up a new cause of action, notwithstanding the amendment may be established by different proof from that required to sustain the original petition." Citing numerous cases. See, also, 49 C. J. 510; 33 Tex. Jur. § 86, p. 517. In the instant case the trial amendment merely set up additional facts developed upon the trial, but the subject-matter, the parties, the transactions, that is, the conspiracy, the fraud, and imposition alleged as inducing the execution of all of said instruments, remained the same. The allowance of the amendment was one addressed to the discretion of the trial court, and we find no abuse of that discretion in the instant case. 33 Tex. Jur. §§ 88 and 89, p. 520.

No new cause of action being asserted in the trial amendment, and the defendants having waived their former pleas of privilege filed by them, and having answered to the merits of plaintiff's suit, it was not error for the trial court to strike out, on motion of plaintiff, the new pleas of privilege to the trial amendment filed by defendants. What we have already said and the conclusions above announced disposes of this contention made by the defendants, and further discussion thereof is unnecessary.

The next contention made is that the trial court erred in overruling defendants'

motions for continuance, the first of which was filed before the trial began, and the second filed upon the filing by the plaintiff of her trial amendment, because of the absence of a material witness, viz., Mrs. J. C. Stribling, who was also a defendant. Mrs. J. C. Stribling, who formerly resided in Llano county, resided at the time of the trial in Fisher county, Tex.

It appears that all parties and their respective counsel met at Johnson City, Blanco county, Tex., on September 27, 1933, at which time the case was set for trial on October 2d. At that time plaintiff had on file her second amended original petition. On September 28th plaintiff filed her third amended original petition, on which she went to trial on October 2d. Defendants urge that the second amended petition did not state a cause of action either against them or against Mrs. J. C. Stribling, and that they therefore advised Mrs. J. C. Stribling that it would not be necessary for her to be present at the trial, and they took no steps to take her depositions. In their first motion for continuance they do not allege any surprise at the allegations of the third amended petition; nor do they allege that they had "used due diligence to procure such testimony," nor that she would be present upon another trial, nor that they would procure her testimony upon another trial. The application did not, therefore, show "statutory diligence" required by article 2168, R. S., a compliance with which was necessary to entitle them to a continuance as a matter of right. St. Louis & S. F. R. Co. v. Woolum, 84 Tex. 570, 19 S. W. 782; Ft. Worth & D. C. R. Co. v. Jenkins (Tex. Civ. App.) 252 S. W. 189; 9 Tex. Jur. § 66, p. 739. The rule announced in Cleveland v. Cole, 65 Tex. 402, and Doll v. Mundine, 84 Tex. 315, 19 S. W. 394, is not applicable, and the granting or refusing of such application was a matter addressed to the sound discretion of the trial court. Unless clearly abused that discretion will not be disturbed on appeal. 9 Tex. Jur. § 83, p. 575, and numerous cases there cited.

No surprise is shown in the filing of the third amended original petition. We have compared it carefully with the second amended original petition, and in so far as grounds of fraud, conspiracy, and imposition upon plaintiff is concerned, and the grounds alleged for setting aside the instruments attacked, both pleadings are substantially the same. The evidence required to meet the issues of fraud made would have been the same in both. The defendants excused Mrs. J. C. Stribling from attendance upon the trial, obviously relying upon the unrecorded instruments held by them, dated May 14, 1932, as a defense. The testimony of Mrs. J. C. Stribling desired related to the execution of the instruments of April 23d, and the issue of fraud in their procurement. Defendants had full notice of these issues both from the pleadings of plaintiff throughout and from the depositions of Mrs. L. F. Stribling, herself, which had been on file in the case since August 22, 1933, and had ample opportunity either to have had the witness present, or to have taken her depositions had they desired to do so. Under these circumstances it is clear, we think, that no abuse of discretion was shown in refusing said first application for a continuance.

The second application for a continuance was made when plaintiff filed her trial amendment, seeking to cancel also the instruments of May 14, 1932, on the ground that Mrs. J. C. Stribling's testimony with reference to the execution thereof was material. This application, for the same reasons indicated above, likewise did not comply with the statute. Clearly, we think, the defendants could not urge any surprise that the instruments of May 14th would likewise be attacked for fraud, because the basis of the plaintiff's entire suit was a conspiracy charged against the defendants to deprive her of her property without compensation. The instruments of May 14th show to be corrective and more specific in the description of the properties conveyed by the instruments of April 23d, and defendants obviously had every reason to believe that when their existence became known, which did not occur until plaintiff had closed her case, they would be attacked on the same grounds as were those of April 23d. These instruments of May 14, 1932, had been, since their execution, in the possession of the defendants, who had withheld them from record, and had not seen fit to plead them in their answers. They knew the circumstances surrounding their execution, and obviously intended to introduce them in defense under their general denial. And when so introduced they should have anticipated an attack upon them and should have been prepared to sustain them by

proof against such attack. Under these circumstances we think the defendants were in no position to urge the absence of Mrs. J. C. Stribling, herself a defendant, and wife of the principal actor in the fraud charged, when she had been excused by the defendants in the face of the probability that her testimony would be required. The trial court was, therefore, justified in refusing their second motion for continuance.

Defendants separately urge as error the action of the trial court in refusing the application of Mrs. J. C. Stribling, separately filed and verified by her attorneys, for a continuance, and made after the plaintiff's trial amendment had been filed. This on the ground that up to the filing of such trial amendment, the instruments of May 14th had not been attacked in plaintiff's pleadings. What we have already stated is sufficient to dispose of this contention, and we deem further discussion of it unnecessary. .

Defendants also complain of the definition of "undue influence" given by the trial court in the charge to the jury. On this point the court instructed the jury as follows: " 'Undue influence' is any fraudulent or designing means employed upon and with the maker of an instrument by which, under the circumstances and conditions by which such maker was surrounded he could not well resist and which controlled his volition and induced him to do that which otherwise he would not have done."

The remaining portion of the charge on this issue was clearly in favor of the defendants, of which they cannot complain. The foregoing was a proper charge. It embodied the essential elements of undue influence discussed in Scott v. Townsend, 106 Tex. 322, 333, 166 S. W. 1138; Holmes v. Houston (Tex. Civ. App.) 241 S. W. 1039; Shelton v. Shelton (Tex. Civ. App.) 281 S. W. 331; Taylor v. Small (Tex. Civ. App.) 71 S.W.(2d) 895, 898; to which cases we refer without further discussion here.

The remaining contentions urge that there was no evidence whatever to authorize the submission of special issue No. 1, nor to sustain the answer of the jury thereto. This issue was: "Did the plaintiff, Mrs. L. F. Stribling, at the time she executed to L. F. Stribling, Inc., the deed in controversy, dated April 23, 1932,

understand the nature and effect of said deed?" To which question the jury answered; "No."

The testimony was voluminous, and other than documentary evidence was, for the most part, from interested parties. A review or summary of it here is unnecessary. Suffice it to say that the testimony of Mrs. L. F. Stribling herself was amply sufficient to sustain the jury's findings, and obviously they chose to believe her. That was their prerogative, and is not the concern of the appellate court.

Finding no reversible error in the record, the judgment of the trial court will be affirmed.

Affirmed.