**COMMONWEALTH OF MASSACHUSETTS
v. UNITED NORTH & SOUTH DEVEL-
OPMENT CO., et al.**

No. 9042.

Court of Civil Appeals of Texas. Austin.

Feb. 18, 1942.

Rehearing Denied March 18, 1942.

564

Robert T. Bushnell, Atty. Gen. of Massachusetts, and Trueheart, McMillan & Russell, of San Antonio, for appellant Commonwealth of Massachusetts.

R. B. Ellis, of San Antonio, for garnishee.

Fred Blundell and Tom Gambrell, both of Lockhart, and Brooks, Napier, Brown & Matthews, of San Antonio, for appellee Edgar B. Davis.

BLAIR, Justice.

This garnishment suit or proceeding is ancillary to Commonwealth of Massachusetts v. Edgar B. Davis, 160 S.W.2d 543 this day decided by this court, and wherein a full statement of the nature and result of the litigation is made. Suffice it to say here that in this ancillary garnishment suit or proceeding the trial court quashed the garnishment upon the motion and plea of garnishee and intervening defendant, Edgar B. Davis, because of alleged defects in the affidavit and garnishment bond; and this appeal is by appellant Commonwealth alone from the judgment quashing the garnishment.

The first ground upon which the trial judge quashed the bond was because of the limitation by the sureties of their liability in the bond obligation itself. It provides that the principal, appellant Commonwealth, and the sureties shall be bound only in amounts as follows: (1) "The principal and the Fidelity and Deposit Company of Maryland in the amount of Two Hundred Sixty-six Thousand, Six Hundred Sixty-six Dollars and Sixty-seven Cents ($266,666.67), and no more."

In like manner the National Surety Corporation and the United States Fidelity and Guaranty Company each limited its liability in the bond to $266,666.66, "and no more"; and the Aetna Casualty and Surety Company, the Indemnity Insurance Company of North America, and the Fidelity and Casualty Company of New York each limited its liability in the bond to $200,000, "and no more."

The particular statute involved is Art. 4077, R.S. 1925, which provides that before a writ of garnishment may issue— "* * * the plaintiff shall execute a bond, with two or more good and sufficient sureties, to be approved by the officer issuing the writ, payable to the defendant in the suit, in double the amount of the debt claimed therein, conditioned that he will prosecute his suit to effect and pay all damages and costs that may be adjudged against him for wrongfully suing out such garnishment."

Appellant cites in addition, and as bearing upon the proper interpretation of this statute, portions of Arts. 4969, 4970, which read as follows:

"Private corporations may be created * * * to act as surety and guarantor of the fidelity of employees * * * also upon any bond or bonds that may be required to be filed in any judiciary proceedings * * *. Any such bond may be accepted and approved by the officer charged by law with the duty of accepting and approving the same without being signed by other securities than such corporation. When any such bond shall exceed fifty thousand dollars in penal sum, the officer charged by law with the duty of approving and accepting such bond, may require that such bond be signed by two or more surety companies * * * and any statute or law to the contrary, or requiring any such bond to be signed by two or more good and sufficient sureties, shall be governed and controlled by the provisions of this article. * * *

"Whenever any bond * * * required or permitted to be made, * * * such bond * * * may be executed by a surety company, qualified as hereinbefore provided; and such execution by such company of such bond * * * shall be in all respects a full and complete compliance with every law * * * that such bond * * * shall be executed by one surety or by one or more sureties * * * and all courts * * * shall accept and treat such bond * * * when so executed by such company, as conforming to, and fully and completely complying with, every requirement of every such law * * *."

The trial court construed the first statute as requiring "a bond, with two or more good and sufficient sureties" each bound jointly and severally with the principal "in double the amount of the debt claimed," and held that the garnishment bond in the instant case did not comply with this requirement of the statute, because it was executed by six corporate sureties, neither of which, jointly and severally with other sureties or the principal, bound itself for an amount equal to the amount of the alleged debt, or in double the amount thereof, and because neither surety bound itself to an amount in excess of $266,666.67 on the required bond of $1,400,000.

The trial court also construed Arts. 4969, 4970 as merely authorizing corporate sureties on the bond, and as neither limiting nor adding to the requirements of Art. 4077 as applied to the $1,400,000 bond in suit.

Appellant cites Sub. 8 of Art. 10, R.S. 1925, which requires a liberal construction of all statutes to attain their objective or purpose, and contends that when so construed the objective or purpose of Arts. 4077 and 4969, 4970 is "attained by construing them to require a bond 'in double the amount of the debt claimed,' regardless of the division of the amount among different sureties, so long as one surety is bound along with the principal for every part of the amount"; and that "the matter is foreclosed by the official approval of the bond."

By plain and unambiguous language Art. 4077 provides that before a writ of garnishment shall issue the plaintiff shall execute "a bond, with two or more good and sufficient sureties * * * in double the amount of the debt claimed," and conditioned as required by the statute. This language can only mean that each surety must be bound jointly and severally with the principal to pay the full amount of the bond obligation, and not each severally for a specified or limited portion only. Arts. 4969, 4970 neither add to nor take anything from the requirement of Art. 4077 that the sureties shall each be bound with the principal to pay "in double the amount of the debt claimed." They merely provide for the creation of corporate surety companies; that one corporate surety may execute a bond required by statute; that when any bond exceeds $50,000, two or more corporate sureties may be required to sign it; and that when

so executed the bond shall be regarded and accepted as being in compliance with any statute requiring a bond in judicial proceedings.

To sustain appellant's construction would simply add to the statute a proviso that where there are two or more sureties on a garnishment bond they may by agreement, or under the discretion of the officer charged with the duty of approving the bond, limit their liability to any amount they may agree upon, so long as the sum total of the limited amounts is equal to "double the amount of the debt claimed." This interpretation would extend the statute by implication, and no language in the statute authorizes a resort to implication to arrive at some other intent. The settled rule is that when the legislative intent can be gathered from a reasonable interpretation of the language of a statute, it is not permissible to resort to interpretation by implication. Interpretation by implication is permitted only to supply obvious intent not expressly stated, and never to contradict nor add to a statute. Creager v. Hidalgo County Water Improvement Dist. Tex.Com.App., 283 S.W. 151; Shipley v. Floydada School Dist., Tex.Com.App., 250 S.W. 159. And the officer charged with the duty of approving and accepting this bond has no authority, discretionary or otherwise, to approve a bond which does not comply with the specific or express terms of the statute. Wooters v. Smith, 56 Tex. 198; Texas Nat. Bank v. First State Bank, Tex.Civ. App., 1 S.W.2d 717.

The argument of appellant that "the large number of sureties on this bond in limited amounts, aggregating 'double the amount of the debt claimed,' affords as much, if not more, protection than does one good and sufficient surety company alone in the full amount," is a matter primarily for the legislature to determine, and not having authorized such limitation of liability, the right to do so must be denied. The soundness of the argument may also be doubted. Obviously, if each of the six surety companies had bound itself for the full amount of the bond obligation, appellee would have better protection than he has on this bond wherein each of the six sureties has limited its liability to only a part of the bond obligation. This is because if one of the sureties should become insolvent, then no other surety is liable for the insolvent surety's deficiency,

and thus the total bond liability is reduced in the amount due by the insolvent surety. On the other hand, if each surety had obligated itself to pay the full amount of the bond obligation, then the insolvency of one or more of them would be secured by the obligation of the other sureties to pay in full the bond obligation.

The bond in the instant case is certainly unusual in form, and no Texas case is cited or found by us which construes or interprets Art. 4077 as authorizing the sureties on a garnishment bond to agree in the bond itself that each shall not be jointly and severally bound for the full amount of the bond obligation, but each severally for a specified or limited part only. Having determined under the rule of liberal construction that the plain and unambiguous language of Art. 4077 requires that each surety on a garnishment bond shall be jointly and severally bound with the principal to pay "in double the amount of the debt claimed," it follows that this requirement or procedure must be strictly complied with under our court decisions. Buerger v. Wells, 110 Tex. 566, 222 S.W. 151; Citizens' Nat. Bank v. Pollard, Tex.Civ.App., 31 S.W.2d 508.

The trial court also held the garnishment bond to be invalid, because at the time of its execution neither the Governor of appellant Commonwealth, who signed it, nor the Attorney General and former special attorney, who filed it, had authority under any law to bind appellant Commonwealth to pay the $1,400,000 upon the happening of the conditions of the bond. We think the trial court erred in this conclusion.

The question will not be discussed at length here, because the Commonwealth's liability on the bond obligation is a paramount issue in the main suit to which this proceeding is only ancillary. Suffice it to say that a state, as a political corporation, may institute suit in its own courts, or in the courts of other states or the nation, to protect its pecuniary interests; and in such suit may adopt any remedy or employ any legal measure, writ or proceeding that a private suitor may use; and is governed by the same rules as are private litigants. In consequence of the right of the state to use the writ of garnishment, it necessarily follows that the Governor, who brings the suit in behalf of the state, may execute the bond required

before such writ may issue. Obviously, if the state is regarded as a private individual when it enters suit, and entitled to use the writ of garnishment to enforce its rights, then it must in like manner as an individual execute the required bond before the writ may issue, unless the legislature has exempted the state from such bond requirement because of its sovereignty. No such legislation is shown to apply in the instant case, and the proper officials of appellant Commonwealth, both in the court below and here, insist that its Governor was at all times authorized by the laws of Massachusetts to execute the bond, and that it is a valid subsisting obligation of that state for the purposes for which it was executed and delivered.

Moreover, we are of the view that the Legislature by enacting a "Resolve" with reference to the authority of the Governor to execute this bond obligation, has interpreted its existing general laws as authorizing the Governor to execute same, and has in any event ratified and confirmed the obligation and the wrongful garnishment, all of which matters are more fully discussed in the opinion in the main suit to which this suit or proceeding is ancillary.

The trial court also quashed the garnishment, holding that at the time the writ was issued there was pending a proceeding tantamount to garnishment in the Massachusetts courts, wherein assets costing more than $1,000,000, alleged under oath of appellant to belong to appellee Davis, were impounded by injunction, and that therefore the writ of garnishment procured herein constituted a double levy and an abuse and misuse of process, and should be set aside. We think the trial court erred in this conclusion, because such alleged abuse of the use of legal process is not ordinarily ground for quashing the garnishment; but such alleged abuse or misuse of process may in some instances be ground for the recovery of damages for the wrongful issuance of garnishment, which question is involved in the main suit. Stiff v. Fisher, 2 Tex.Civ.App., 346, 21 S. W. 291; Zinn v. Rice, 154 Mass. 1, 27 N.E. 772, 12 L.R.A. 288; Tuthill v. Sherman, 32 S.D. 103, 142 N.W. 257. We pretermit a further discussion of the matter here.

The trial court also quashed the garnishment because the affidavit therefor

was solely that of a special attorney for appellant Commonwealth upon information and belief, not showing what, if any, information the attorney had as to the facts stated. The trial court erred in this conclusion. Affiant was the attorney of record in the case and his affidavit was in the words of the statute. The suit was one for debt evidenced by the Commonwealth's judgment against appellee, and this judgment debt is not such a matter which might rest peculiarly within the knowledge or conscience of the client, nor such a matter as would require the attorney making the affidavit to state his means of information or knowledge of the facts stated. Doll v. Mundine, 84 Tex. 315, 19 S.W. 394; Art. 24, R.S. 1925, now Rule 14 Tex. R.C. P.

The action of the trial judge quashing the garnishment and all the proceedings thereon were introduced and filed in the suit on the trial of the main case out of which this ancillary proceeding arose, and all of which matters were taken into consideration by the trial court in the trial of the main suit, and wherein the cross-action for damages for wrongful garnishment was properly filed, and we pretermit a further discussion of these matters here. 20 Tex.Jur., 893.

· For the reasons stated, the judgment of the trial court quashing the garnishment is affirmed.

Affirmed.